UNITED STATES of America,
Plaintiff–Appellee,

v.

Majid Mahfouz THABATEH,
Defendant–Appellant.

No. 00–50074.

D.C. CR–97–00037–RJT–01.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2002.

Decided May 6, 2002.

Before HAWKINS and FISHER, Circuit Judges, and WEINER, District Judge *.

## MEMORANDUM **

1. There was no error in the district court's instruction to the jury that pseudoephedrine is a "listed chemical." Thabateh's assertion that pseudoephedrine is only a "listed chemical" when possessed in certain quantities relies upon a statutory provision that is irrelevant to the crime established by 21 U.S.C. § 841. The fact that the district court instructed the jury that pseudoephedrine is a "listed chemical" as a matter of law did not remove the

---

\* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

mens rea requirement from the statute. The jury was instructed that the government had to prove beyond a reasonable doubt that Thabateh knew the substance was pseudoephedrine and was going to be used to manufacture methamphetamine.

■ 2. The instructions did not amount to a constructive amendment or prejudicial variance to the indictment. Viewed as a whole, the court's instructions—taken verbatim from the Ninth Circuit Model Jury Instructions—were not at variance with the offense charged in the indictment. In addition, the only evidence offered by the government was that the controlled substance at issue was methamphetamine, and there was no evidence presented by the defense that was defeated by the court's including the "other prohibited drug" language in its instruction. The defense only asserted that the pseudoephedrine could have been intended by its purchaser to be *legally* used by truckers to stay awake, as diet pills or for export to Mexico. Nothing in the jury charge can be said to have criminalized such a use.

■ 3. There was no error in district court's (a) admission at trial of the additional attempted pseudoephedrine sale which occurred nine months after the charged sale, nor (b) in its including that attempted sale as relevant conduct at sentencing. The evidence of the attempted pseudoephedrine sale in November 1997 was admissible, both as Fed. R. Fed. R.Evid. 404(b) evidence of Thabateh's knowledge that the pseudoephedrine would be used to make methamphetamine, as well as for a non–404(b) purpose, since the November 1997 attempt was inextricably intertwined with the appellant's pattern of conduct. Since it was properly admitted at trial, it was not error to include that attempted sale as relevant conduct under U.S.S.G. § 1B1.3.

■ 4. Including the attempted sale in the sentence did not violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), since inclusion of the November 1997 amount did not raise Thabateh's sentence above the statutory maximum.

■ 5. There is no ground for a new trial based upon the court's ex parte conference with the AUSA to hear the government's arguments for redaction of a trial exhibit. The transcript of the ex parte conference and the unredacted trial exhibit show no abuse of the court's discretion in meeting with the AUSA to hear the government's arguments that certain information contained in the exhibit—a survey of suspect pseudoephedrine brand names—threatened ongoing drug investigations. Thabateh makes no substantial argument that this procedure or the redaction prejudiced his case.

■ 6. As Thabateh was permitted to explore where and how the government's survey was conducted, as well as the results it recorded, we find no error in the district court's prohibiting him from inquiring into the portion that was redacted. He was able to get before the jury that the survey included nine brand names, not just the two the government alleged were preferred by methamphetamine manufacturers. While the district court did sustain a scope objection to Thabateh's question regarding whether the survey mentioned Arabic speakers, the record does not support Thabateh's contention on appeal that one of his defenses was that he may well have thought that Trask was going to resell the pseudoephedrine to stores catering to Middle Eastern clientele. Accordingly, Thabateh has failed to demonstrate any abuse of discretion in the way the district court allowed him to impeach the government's expert.

7. There was no error in the district court's exclusion of the defense expert's testimony. Thabateh sought to elicit testimony that bulk pseudoephedrine could be used for other things besides making methamphetamine. His expert admitted, however, to having no expertise in this area, and that some of his information was outdated or hearsay. Excluding the defense expert from testifying on matters outside his expertise was not a violation of Thabateh's Sixth Amendment rights.

8. There was no abuse of discretion in excluding, on hearsay and relevancy grounds, evidence of Thabateh's employer's activities, since the offer of proof which the district court heard before making the ruling failed to establish that the probative value of the evidence outweighed its prejudice.

9. Thabateh next argues that the district court's finding that he received the entire *Miranda* warning, understood it, and made voluntary statements, was error. Even if there was error, that error was harmless given that the admissions elicited did not concern the central issue of the trial, namely whether Thabateh knew the pseudoephedrine was going to be used to make a controlled substance.

10. Although there were several sustained objections to the government's closing argument, there was no contemporaneous motion for a curative instruction or mistrial. The failure to give an instruction or declare a mistrial based on these objections was not plain error. The objections that were overruled—asserting the government improperly argued that the appellant had some burden of proof—were properly decided as there was no attempt by the government to make such an implication.

11. Where, as here, the district court instructs the jury that the tape recording is the evidence, and not the transcript, there was no error in permitting the jury to read along in the transcript as the tape was replayed in open court during the deliberations.

12. Given the evidence adduced by the government that Thabateh directed the negotiations, set the prices, personally delivered the pseudoephedrine and proactively sought sales, there was no clear error in the district court's factual determination that Thabateh was not a minor participant and thus not entitled to a minor participant adjustment under U.S.S.G. § 3B1.2.

13. Finally, there is no merit to Thabateh's argument that he was deprived of his constitutional rights by the government's constant maligning of his counsel. While some of the allegedly maligning comments were the subject of contemporaneous objections, most were not and there was no contemporaneous motion for mistrial or curative instruction. We thus review for plain error. There was no effect upon Thabateh's substantial rights arising from the isolated incidents he recounts so as to conclude the trial was fundamentally unfair.

AFFIRMED.